## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **AT&T, a New York corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:04CV296** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ASHA DISTRIBUTING, INC., a** | ) | **MEMORANDUM AND ORDER** |
| **Nebraska corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

After a nonjury trial, I found that defendant ("ASHA") is liable to plaintiff ("AT&T")
in the amount of $61,797.40 on ASHA's Long Distance Account and that ASHA was liable
to AT&T in the amount of $21,187.61 on ASHA's Private Line Account.  Now pending
before the court is AT&T's application for an award of attorneys' fees and interest (#55).
Having considered the arguments submitted by the parties, I find that Nebraska law prohibits
the relief requested and that the application should be denied.

### A.  ATTORNEY FEES

As discussed in the September 28, 2005 MEMORANDUM AND ORDER, the accounts at
issue in this case defaulted to the terms of AT&T's general "Business Service Agreement"
upon the expiration of their original terms.  The Business Service Agreement provides that
state law issues concerning its construction, interpretation and performance "shall be
governed by the substantive laws of the State of New York, excluding its choice of law
rules."  The Business Service Agreement provides that the customer is responsible for

reimbursing AT&T for all costs, including reasonable attorney fees, associated with collecting delinquent or dishonored payments.  If AT&T does not receive payment by the due date, the customer may be charged interest on any unpaid balances at the rate up to one-and-a half percent per month or the maximum rate allowed by law.

### 1.  Choice of Law

In most jurisdictions it is the rule that provisions or stipulations in various contracts for payment of attorney's fees in the event it is necessary to resort to aid of counsel for enforcement or collection are valid and enforceable, where not precluded by statutory prohibition.  Robert L. Rossi, 1 *Attorneys' Fees* §§ 9:3 & 9:5 (3d ed.) (Westlaw 2005).

Nebraska does not follow the majority rule.  Nebraska law allows the recovery of attorney fees and expenses only where such recovery is provided by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Nebraska Nutrients, Inc. v. Shepherd*, 261 Neb. 723, 780, 626 N.W.2d 472, 517 (2001); *see also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997).

There is no Nebraska statute providing for recovery of attorney fees in a contract action, and no "uniform course of procedure" has been established in that regard.  *See, e.g., Lamb Eng'g*, 103 F.3d at 1434, *Nebraska Nutrients*, 261 Neb. at 781, 525 N.W.2d at 517. Thus, under Nebraska law, "a contractual provision that in the event of any dispute or litigation involving the contract, the prevailing party shall be entitled to recover all costs of

-2-

suit, including reasonable attorney fees, is contrary to public policy and void." *GFH Fin.*
*Services. Corp. v. Kirk*, 231 Neb. 557, 567, 437 N.W.2d 453, 459 (1989).

As the Nebraska Supreme Court recently explained in *Nebraska Nutrients, Inc. v.*
*Shepherd*, 261 Neb. at 782, 626 N.W.2d at 518, longstanding Nebraska precedent holds that
attorney fees are elements of court costs and affect only a remedy and not a substantive part
of the contract itself; therefore, "Nebraska law deems the recovery of attorney fees in the
action in which they are incurred to be a procedural issue governed by the law of the forum."
*Id.* (citing *Hallam v. Telleren*, 55 Neb. 255, 75 N.W. 560 (1898), and *Security Co. v. Eyer*,
36 Neb. 507, 54 N.W. 838 (1893)).

Assuming that the contract provision for attorney fees is enforceable under New York
law, the dispositive question is whether a Nebraska court must apply New York law in
resolving this issue.  "A district court sitting in diversity must apply the conflict of law rules
for the state in which it sits." *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th
Cir. 2001).  In determining whether a choice of law provision in an agreement will be given
effect, a federal court sitting in diversity looks to the choice of law principles of the forum
state. *AT&T Corp. v. Firmware of Minnesota, Inc.*, Case No. 02-1010, 2004 WL 112632 at
*2 (D. Minn., Jan. 20, 2004).

In deciding choice of law questions, Nebraska follows the Restatement (Second) of
Conflict of Laws. *Inacom*, 254 F.3d at 687 (citing *Harper v. Silva,* 224 Neb. 645, 399
N.W.2d 826, 828 (1987)). "In contract actions, the Nebraska Supreme Court has specifically

adopted the approach set forth in section 188 of the Restatement (Second) of Conflict of Laws." *Bryan Mem'l Hosp. v. Allied Property & Cas. Ins. Co.*, 163 F. Supp. 2d 1059, 1064-64 (D. Neb. 2001) (citing *Federal Deposit Ins. Corp. v. Nordbrock*, 102 F.3d 335, 338 (8th Cir. 1996), and *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312 (8th Cir. 1991)).

Section 188 of the Restatement (Second) of Conflict of Laws ("Restatement") provides:

(1)   The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.[1]

(2)   In the absence of an effective choice of law by the parties (see § 187)[2], the

---

[1]Section 6 of the Restatement provides:

(1)   A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2)   When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a)  the needs of the interstate and international systems,
(b)  the relevant policies of the forum,
(c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d)  the protection of justified expectations,
(e)  the basic policies underlying the particular field of law,
(f)  certainty, predictability and uniformity of result, and
(g)  ease in the determination and application of the law to be applied.

[2]Section 187 provides:

(1)   The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2)   The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

**(b)** *application of the law of the chosen state would be contrary to a fundamental policy*

-4-

contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a)   the place of contracting,

    (b)   the place of negotiation of the contract,

    (c)   the place of performance,

    (d)   the location of the subject matter of the contract, and

    (e)   the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"In a diversity case 'where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Lamb Eng'g*, 103 F.3d at 1434 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)). "The weight of authority is to the effect that a stipulation for attorney's fees, although valid under the law of the jurisdiction in which the contract containing the stipulation was made or was to be performed, cannot be enforced in a jurisdiction under the law of which such a stipulation is invalid." Rossi, 1 *Attorneys' Fees* at § 9:7.

    In this instance, and considering the Restatement factors, I find that Nebraska law has the more significant relationship to the attorneys' fee provision now at issue. Furthermore, it appears that the Nebraska's precedent denying the right to attorney's fees in contract

---

*of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.*

    (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

(Emphasis added).

disputes reflects a substantial policy of the State of Nebraska.  This policy was reiterated by

the Nebraska Supreme Court as recently as 2001:

> While more than a century old, the holdings of *Security Co. v. Eyer, supra,* and
> *Hallam v. Telleren, supra,* that attorney fees are elements of court costs and
> therefore affect only a remedy have never been abrogated. Indeed, we have
> followed this principle in other contexts.  See, e.g., *Brodersen v. Traders Ins.
> Co.,* 246 Neb. 688, 523 N.W.2d 24 (1994) (finding attorney fees are costs, not
> damages)*; Smith v. Fremont Contract Carriers,* 218 Neb. 652, 358 N.W.2d
> 211 (1984) (holding statutory amendment allowing recovery of attorney fees
> in workers' compensation cases was procedural in nature)*; Nye-Schneider-
> Fowler Co. v. Bridges, Hoye & Co.,* 98 Neb. 863, 155 N.W. 235 (1915)
> (holding attorney fees are costs and relate only to remedy).

*Nebraska Nutrients, Inc. v. Shepherd*, 261 Neb. at 782, 626 N.W.2d at 518.

### 2. Preemption

In its reply brief[3], AT&T argues for the very first time that Nebraska law is

inapplicable to the issue of attorneys' fees "based upon principals of implied federal

preemption" because the attorney fee provision "is a term and condition of interstate

telecommunication service that is regulated under the Communications Act of 1934 ("FCA")

and governed by the Federal Communications Commission."  Filing #61 at p. 2.[4]

---

[3]Regarding ASHA's objection to the filing of a reply brief (#62), NECivR 7.1(c) provides:
> **(c)  Replying to Opposing Briefs and Evidence.**  The moving party may file a reply brief and
> index of evidence no later than five (5) days after the nonmoving party files and serves the
> opposing brief. The reply brief may not merely repeat the moving party's initial arguments,
> but must address factual or legal issues raised in the opposing brief. No further briefs or
> evidence may be filed without the court's leave.

ASHA correctly observes that the issues raised in AT&T's reply brief go beyond those raised in ASHA's
responsive brief.  In the absence of a motion to strike, however, the court elects to consider the new issues
raised in the reply brief.

[4]I note that AT&T invoked the court's diversity jurisdiction, and alleged no federal question, when it
filing this collection suit.  AT&T further alleged that venue was appropriate in the District of Nebraska

The cases cited by AT&T are rate disputes where the preemption issue related to the enforceability of arbitration clauses in AT&T's Consumer Services Agreement.  In *Ramette v. AT&T Corp.*, 351 Ill. App. 3d 73, 812 N.E.2d 504 (Ill. App. 2004), the court held that the FCA preempted plaintiffs' state-law unconscionability challenge to AT&T's arbitration clause.  In *Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002), the Seventh Circuit held that the FCA preempted state-law challenges to the enforcement of AT&T's arbitration clause.  The courts in *Ramette* and *Boomer* referred to sections 201(b)[5] and 202(a)[6] of the

---

because it conducts business in this district and provided telecommunications services to ASHA in this district.

[5]Section 201 provides, in part:
**§ 201. Service and charges**
    (a) It shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service upon reasonable request therefor;  and, in accordance with the orders of the Commission, in cases where the Commission, after opportunity for hearing, finds such action necessary or desirable in the public interest, to establish physical connections with other carriers, to establish through routes and charges applicable thereto and the divisions of such charges, and to establish and provide facilities and regulations for operating such through routes.
    (b) All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]
47 U.S.C. § 201.

[6]Section 202 provides, in part:
**§ 202. Discriminations and preferences**
(a) Charges, services, etc.
It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or  in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any  undue or unreasonable prejudice or disadvantage.
(b) Charges or services included
Charges or services, whenever referred to in this chapter, include charges for, or services in connection with, the use of common carrier lines of communication, whether derived from wire or radio facilities, in chain broadcasting or incidental to radio communication of any kind.

-7-

FCA in reaching their decisions.  AT&T contends these statutes, read together, "provide a congressional intent that all customers receive uniform rates, terms and conditions of service."  Filing #61 at p. 4.

While the FCA is preemptive on issues involving rates, terms and conditions of service, it does not completely preempt all state law that touches on some aspect of the telecommunications industry in the sense that the Employment Retirement and Income Security Act ("ERISA") and Labor and Management Relations Act ("LMRA") have been found to completely preempt state law claims.  For example, in *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069 (7th Cir. 2004), the plaintiff filed a complaint in state court for breach of contract, breach of the covenant of good faith and fair dealing, consumer fraud, and unjust enrichment, based on allegations that the defendant cellular service provider, Cingular, applied billable minutes incurred in one month to the billing periods in other months, causing its customers to incur charges in excess of the charges they should have paid under the service plan they purchased.  Cingular removed the action to federal district court.  The district court denied the plaintiff's motion for remand, holding that the complaint constituted a challenge to the reasonableness of Cingular's rates, and such a challenge was completely preempted by the FCA, 47 U.S.C. § 332(c)(3)(A).  On appeal, the Seventh Circuit concluded that the district court erred in denying Fedor's motion to remand the case back to state court because the complaint did not actually challenge rates or market entry, areas in which the

---

47 U.S.C. § 202(a).

FCA has a preemptive effect.  The Court of Appeals rejected Cingular's argument that the complaint involved the timing of billing and the amount billed, and therefore constituted a challenge to rates:

> Essentially, Cingular would interpret the preemption provision as covering any claim that touches on the rates charged in any manner.  Because the complaint alleges that Fedor's calls were improperly billed, Cingular asserts that it challenges the rates.  That overstates the scope of the preemption, and in fact is a position that has been repeatedly rejected by courts and the FCC....

355 F.3d at 1072.  The court observed that the nature of the claim governs this inquiry, and "the focus is whether the claim necessarily treads upon the federally-reserved areas." *Id*.  The court cited with approval decisions rejecting the argument that any claims related to the billing amount are automatically preempted under § 332 of the FCA.  "Instead, we must examine whether the claims require the state court to assess the reasonableness of the rates charged, or impact market entry." *Id*. at 1074.[7]  The court found that a state court analyzing Fedor's claim would need to refer to the rates in assessing damages, "but would never examine the reasonableness of those rates."  Thus, Fedor's state law claims were not preempted, and  case was remanded to the district court with directions for it to remand the case to state court.

---

[7]*See also Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056, 1075 (9th Cir. 2005) ("To determine whether Plaintiff's state law claims are preempted, we must consider the theory of each claim and determine 'whether the legal duty that is the predicate' of that claim is inconsistent with the federal regulations.").  The plaintiff's claim for breach of implied contract was not be preempted by FCA § 276(c).  "The Commission's regulations contemplate that [payphone service providers] and carriers, in some circumstances, will agree to contracts for payphone compensation with terms that differ from those contained in the regulations....  In those circumstances, state contract law, not the federal regulations, would govern the resolution of contract-related questions, such as whether a contract was formed, what terms the parties agreed to, and whether the contract was breached." *Id*. at 1076.

Similarly, in *Phillips v. AT&T Wireless*, No. 4:04-CV-40240, 2004 WL 1737385 (S.D. Iowa, July 29, 2004), the plaintiff filed a complaint in Iowa state court, contending that AT&T charged illegal early termination fees and illegal default charges in its cellular service contracts in violation of Iowa Code §§ 537.3310 and 537.3402 and that AT&T engaged in unfair debt collection in violation of Iowa Code § 557.7103. AT&T removed the matter to federal court, contending, *inter alia*, that the FCA completely preempted the issues raised in the complaint:

> AT&T maintains that because the FCA provides the exclusive cause of action for challenges to a wireless provider's rate structure, and the AT&T early termination fee is a component of its rate structure, Phillips' claims necessarily arise under federal law, this case was properly removed under 28 U.S.C. § 1441, and Plaintiff's motion to remand should be denied. Phillips, on the other hand, firmly contends that even if there is complete preemption under the FCA, the doctrine is not controlling in this case because he is challenging an early termination fee which is a matter of consumer protection and not a direct challenge to the rate structure of AT&T.

2004 WL 1737385 at *9. While the court acknowledged "section 332 of the FCA completely preempts all challenges to rates and market entry in light of the decision in *Beneficial* [*Nat'l Bank v. Anderson*, 539 U.S. 1 (2003)]," only claims that would regulate "rates" or "market entry" fell within the bounds of complete preemption under the FCA, and the plaintiff's claims did not constitute a challenge to either the rates or market entry of AT&T. The court agreed "that early termination fees are not rates but rather are other terms and conditions, and Congress demonstrated a specific intent to exclude 'other terms and conditions' from preemption under section 332." *Id.* at *10. "This Court agrees that 'rate' must be narrowly

defined or there is no ability to draw a line between economic elements of the rate structure and normal costs of operating a telecommunications business that have no greater significance than as factors to be considered in determining what will ultimately be required of rates to provide a reasonable return on the business investment." *Id.* The court held that the early termination fee at issue  was not a "rate" for purposes of complete preemption, and thus the action did not depend on substantial questions of federal law. As a result, removal was improper and the cause was remanded to state court. *Id.* at *11-12.

In the case at bar, AT&T emphasizes the point that FCA sections 201(b) and 201(a) demonstrate a congressional intent that individual long-distance customers through the United States receive uniform rates, terms, and conditions of service.  While that proposition may be true,  I am not persuaded that a contractual provision allowing for the recovery of attorneys' fees from a customer in a billing dispute constitutes a "critical component of the AT&T rate structure."  *See Phillips v. AT&T Wireless*, 2004 WL 1737385 at *7.  In this case, ASHA did not challenge the validity of AT&T's rate structure, and AT&T presented absolutely no evidence that its attorney's fee clause has any relevance or effect on rates, terms or conditions of service.  I therefore reject AT&T's assertion that the attorney fee provision "is a term and condition of service, which is governed by the FCC."

For these reasons, AT&T's application for attorneys' fees is denied.

-11-

## B.  PREJUDGMENT INTEREST

The Business Services Agreement provides that a customer of AT&T may be charged interest on any unpaid balances at the rate up to one-and-a half percent per month or the maximum rate allowed by law.  AT&T invokes Neb. Rev. Stat. §45-104 in support of its request for prejudgment interest.  Filing #61.  Section 45-104 provides:

> Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

As construed by the Nebraska Supreme Court, however, "Section 45-104 merely provides the interest rate on prejudgment interest in specific types of actions.  However, even if a litigant's action is one of those actions listed in § 45-104, that party first must comply with the requirements of § 45-103.02 to be entitled to prejudgment interest at that rate." *Records v. Christensen*, 246 Neb. 912, 918, 524 N.W.2d 757, 762 (1994).  The court has reiterated its position that, to obtain an award of prejudgment interest, a party must comply with the requirements of § 45-103.02:

> [W]e have repeatedly held that § 45-103.02 prescribes the conditions for allowance of prejudgment interest on all causes of action accruing on or after January 1, 1987.  See, *Blue Valley Co-op. v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999); *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998); *Daubman v. CBS Real Estate Co.*, 254 Neb. 904, 580 N.W.2d 552 (1998); *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Label*

-12-

*Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995); *Peterson v. Kellner*, 245 Neb. 515, 513 N.W.2d 517 (1994); *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993); *Elson v. Pool*, 235 Neb. 469, 455 N.W.2d 783 (1990); *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989).

*Folgers Architects Ltd. v. Kerns*, 262 Neb. 530, 542, 633 N.W.2d 114, 123-24 (2001).  Citing

*Records v. Christensen*, the court specifically rejected the argument that the contract between

the parties constituted an agreement allowing prejudgment interest under the "[u]nless

otherwise agreed" language in § 45-104.  *Id.*, 633 N.W.2d at 124.

> Contrary to [plaintiff-appellee's] assertions... *Mandolfo* [*v. Chudy*, 5 Neb. App. 792, 564 N.W.2d 266 (1997), *aff'd*, 253 Neb. 927, 573 N.W.2d 135 (1998)] does not hold that if the parties contract for the payment of interest, then the contract, and not § 45-103.02, governs the award of prejudgment interest. Unlike the present case, *Mandolfo* involved a suit on an interest-bearing instrument.  In such a suit, the plaintiff is merely seeking damages for breach of contract, and one of the elements of such damages is the amount of interest the plaintiff would have obtained had the breach not occurred.  See *Stansbery v. Schroeder,* 226 Neb. 492, 412 N.W.2d 447 (1987).  Such interest is not "prejudgment" interest subject to the statutory requirements of § 45-103.02. See *First Nat. Bank v. Bolzer,* 221 Neb. 415, 377 N.W.2d 533 (1985). [Plaintiff-appellee's] contention that the Court of Appeals erred in disregarding the contractual prejudgment interest provision is without merit.

*Id*. at 543, 633 N.W.2d at 124.

Section 45-103.02 provides:

**§ 45-103.02. Prejudgment interest; accrual; when; conditions.**
    (1)   Except as provided in section 45-103.04, interest as provided in section 45-103 shall accrue on the unpaid balance of ***unliquidated claims*** from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the entry of judgment if all of the following conditions are met:
        (a)   The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;
        (b)   The offer is made not less than ten days prior to the commencement of the trial;

(c)   A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and

(d)   The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.

(2)   Except as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of *liquidated claims* from the date the cause of action arose until the entry of judgment.

(Emphasis added).

"Liquidated claims are those where there is no reasonable controversy as to the plaintiff's right to recover or as to the amount of such recovery. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).   By contrast, unliquidated claims are those where the plaintiff's right to recover or the amount of such recovery is subject to a reasonable controversy. *A.G.A. Inc. v. First Nat. Bank*, 239 Neb. 74, 474 N.W.2d 655 (1991)." *Blue Valley Coop. v. National Farmers Org.*, 257 Neb. 751, 764, 600 N.W.2d 786, 796 (1999).  In this case, there was a reasonable dispute over both AT&T's right to recover and the amount owed.  AT&T's claims were not liquidated claims.

Since all of AT&T's claims were unliquidated claims, and AT&T has not shown compliance with Neb. Rev. Stat. § 45-103.02(1), AT&T cannot recover prejudgment interest in this case.

## ORDER

For the reasons discussed herein,

-14-

**IT IS ORDERED** that AT&T's application for an award of attorneys' fees and interest (#55) is denied.

**DATED January 23, 2006.**

> **BY THE COURT:**
>
> **s/ F.A. Gossett**
> **United States Magistrate Judge**